NOTICE

Decision filed 07/25/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220121-U

NOS. 5-22-0121, 5-22-0122 cons.

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* LIAM S. and LEVI S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Coles County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 19-JA-63, 19-JA-64 |
| | ) | |
| | ) | |
| Helane B., | ) | Honorable |
| | ) | Jonathan T. Braden, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's judgment terminating the respondent's parental rights is affirmed where the circuit court's finding that the respondent was an unfit person was not contrary to the manifest weight of the evidence.

¶ 2    The respondent, Helane B., is the natural mother of twins, Liam and Levi S., born on May 13, 2019. On December 29, 2021, the circuit court of Coles County found Helane to be an unfit person within the meaning of the Adoption Act (750 ILCS 50/1(D) (West 2020)) for failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children (*id*. § 1(D)(m)(i)) and for failing to make reasonable

1

progress toward the return of the minor children (*id*. § 1(D)(m)(ii)) during the nine-month period of August 16, 2019, to May 16, 2020, following the adjudication of neglect on August 16, 2019. On March 2, 2022, the circuit court determined that the termination of Helane's parental rights was in the best interest of the minor children and terminated Helane's parental rights regarding Liam and Levi. Helane now appeals the circuit court's judgment terminating her parental rights arguing that the circuit court's finding that Helane was an unfit person was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                I. BACKGROUND

¶ 4     On May 1, 2019, the Illinois Department of Children and Family Services (DCFS) received information through its hotline that Helane had stopped taking her psychiatric medication and had become physically violent towards her paramour, Adam S.,[1] including hitting and slapping Adam while in a moving vehicle in which her 14-month-old daughter[2] was present. The information received by DCFS also indicated that Helane was pregnant with twins at the time, but was continuing to engage in drug usage.

¶ 5     In April 2019, Helane and Adam moved into a residence together. The twins were born prematurely on May 13, 2019, and remained in the hospital for approximately a

_____

[1]Adam S. signed a voluntary acknowledgement of paternity for the twins, but subsequent paternity testing ordered by the circuit court determined that the biological father of the twins was Tony S., who was also the biological father of Helane's daughter. Adam S. and Tony S. were respondents, along with Helane, in the circuit court's proceedings, but the parental rights of Adam S. and/or Tony S. are not at issue in this appeal. As such, this court has limited the summarization of the background information to that information related to Helane and necessary to the issues raised on appeal.

[2]Helane's parental rights regarding her daughter are not at issue in this appeal.

2

month. Upon discharge, the hospital's physician ordered home health care for the twins since he believed that the twins needed follow-up care beyond the routine appointments normally required for infants. The hospital's physician also had concerns regarding the twins' medical needs since Helane had smoked marijuana throughout her pregnancy and was continuing to smoke marijuana while breastfeeding, although he had strongly warned Helane against marijuana use while breastfeeding due to the affect it would have on the twins' development. Helane, however, refused the home health care.

¶ 6    On July 4, 2019, Adam made a 911 call to the Paris Police Department requesting assistance because Helane had ingested unprescribed Xanax[3] and Ritalin[4] and was acting in a manic manner. The police report indicated that Adam had located the antipsychotic medications, which he did not want in his home, and an argument ensued as Helane attempted to regain control of the pills. Adam described Helane as "going crazy" and punching him in the left side of his face with a closed fist. When law enforcement arrived, Adam turned the pills over to the Paris Police Department and Helane was arrested for domestic battery and obstructing a peace officer. The twins were present in the home when the incident occurred.

¶ 7    Due to the hotline report and the incident of domestic violence, child protective services (CPS) contacted Helane and Adam on July 10, 2019. Helane denied any substance

---

[3]Xanax is the generic name for the prescription medication alprazolam, which is used to treat anxiety disorders. https://www.drugs.com/xanax.html (last visited June 7, 2022).

[4]Ritalin is the generic name of the prescription medication methylphenidate hydrochloride, which is used to treat attention deficit disorder (ADD), attention deficit hyperactivity disorder (ADHD), and narcolepsy. https://www.drugs.com/ritalin.html (last visited June 7, 2022).

use, but refused to take a drug screening. Helane also refused intact services. CPS implemented a safety plan due to the domestic violence, but Helane refused to allow the safety plan to remain in place longer than 24 hours. Helane then made allegations of domestic violence against Adam and agreed to go to a domestic violence shelter. The next day, CPS assisted Helane and the twins to a domestic violence shelter and Helane's daughter went to stay with her biological father.

¶ 8     Five days later, on July 15, 2019, CPS received a text message from Adam stating that he had gotten an order of protection against Helane, which included the twins, and that Adam had obtained physical custody of the twins. Adam, however, subsequently dropped the emergency order of protection and allowed Helane to return to the home. On July 24, 2019, Adam again sent a text to CPS, and the text stated that Helane was not caring for the minor children, was bouncing from house-to-house, and was using marijuana and Xanax. Adam's text further stated that "[Helane] is out of control and I am fearing for my son's safety." CPS contacted Adam who stated that Helane had left the residence after Adam had witnessed and confronted her snorting Xanax off the bathroom counter and that he was worried about the twins in Helane's care.

¶ 9     CPS located Helane and requested that she complete drug screening. Helane refused to take the drug screening stating that she had taken unprescribed Xanax two days prior. Helane further stated to CPS that Adam had supplied the Xanax for her. Due to the reported drug use, the domestic violence, concerns regarding Helane's ability to properly care for the twins while using substances, and Adam's inability to protect the minor children, the twins were taken into protective custody on July 24, 2019.

¶ 10    On July 26, 2019, the State filed a petition for adjudication of wardship pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2018)). The petition for adjudication alleged that the twins were neglected as defined in section 2-3(1)(a) of the Act (*id.* § 2-3(1)(a)), because the twins were not receiving the proper and necessary support or other remedial care necessary for their well-being due to Helane's abuse of drugs within the home and her engagement in domestic violence against her paramour while the minor children were present. The petition for adjudication also alleged that the twins were neglected as defined in section 2-3(1)(b) of the Act (*id.* § 2-3(1)(b)), because the twins were in an environment that was injurious to their welfare due to Helane's abuse of drugs within the home and the domestic violence against her paramour while the minor children were present.

¶ 11    A shelter care hearing took place on the same day, July 26, 2019, and the circuit court found that reasonable efforts had been made to keep the twins in the home, but that such efforts had not eliminated the necessity for the removal of the twins from the home. The circuit court entered a temporary custody order pursuant to section 2-10 of the Act (*id.* § 2-10), placing Liam and Levi in the temporary custody of the Guardianship Administrator for DCFS. The circuit court also appointed a special advocate (CASA) as guardian *ad litem* (GAL) for the twins.

¶ 12    On August 16, 2019, after the circuit court had advised Helane of her rights, Helane admitted the allegations contained in the State's petition for adjudication. Based upon Helane's admissions, the circuit court entered a written order of adjudication finding the twins neglected as defined in sections 2-3(1)(a) and 2-3(1)(b) of the Act (*id.* § 2-3(1)(a),

5

(1)(b)) based upon the findings that the twins were not receiving the proper and necessary support or other remedial care necessary for their well-being, and were in an environment that was injurious to their welfare, due to Helane's abuse of Xanax within the home while the minor children were present.

¶ 13    On August 27, 2019, CASA filed a report with the circuit court. The CASA report stated that Helane was not employed, that she was living with Adam in his home, and that she was attending her supervised visits with the twins. The CASA report also stated that Helane had been charged with domestic battery/physical contact in Coles County and had a pending pretrial hearing. The CASA report recommended that the minor children remain in their current foster home, that Helane pursue a viable and legal source of income, and that Helane comply with the assessments and evaluations requested by DCFS.

¶ 14    On September 5, 2019, DCFS filed a report with the circuit court. The DCFS report stated that Helane had participated in an integrative assessment interview on August 30, 2019, but that she was often evasive and did not provide complete information when asked. The DCFS report also indicated that Helane had reported that she had engaged in a mental health assessment and had signed the necessary release so that the information could be verified. The DCFS report stated that Helane would agree to meet with the caseworker when asked and that she consistently visited with the twins.

¶ 15    The September 5, 2019, DCFS report further stated that Helane and Adam had a turbulent relationship that involved domestic violence and that on September 3, 2019, Helane had visited the DCFS office and reported that she could no longer live with Adam and was taking steps to live elsewhere. The DCFS report stated that Helane was not

employed, and that Helane had been sentenced to 24 months of probation, 30 hours of community service, fines, and court costs after pleading guilty on June 16, 2019, to unlawful possession of a controlled substance. Finally, the DCFS report recommended that the circuit court find Helane unable and unwilling to care for, protect, train, educate, supervise, or discipline the twins and that it would be in the best interest of the twins to be adjudicated wards of the court with guardianship and custody placed with DCFS.

¶ 16    DCFS filed an integrated assessment with the circuit court on September 13, 2019. The DCFS integrated assessment stated that Helane was avoidant regarding many of the topics and that she had also provided information that was discrepant with the available records during the assessment interview. As an example, the integrated assessment stated that Helane denied using illicit substances while pregnant; however, the twins' medical records reflected that Helane had smoked marijuana throughout her pregnancy. When confronted with the medical information, the integrated assessment states that Helane then admitted that she had smoked marijuana occasionally during her pregnancy with the twins because it helped with the nausea. The integrated assessment also stated that Helane frequently declined to answer questions that could suggest problems or present her in a less than favorable light, and declined to discuss concerns about domestic violence or substance use.

¶ 17    The DCFS integrated assessment went on to state that Helane was unemployed and that her last employment was approximately two years ago. It further stated that Helane suffered from anxiety, which she appeared to self-medicate with marijuana use. The DCFS integrated assessment stated that substance abuse, domestic violence, and mental health

7

were primary concerns and that there were also concerns about Helane's willingness to prioritize her children's medical and developmental needs. The DCFS integrated assessment stated that Helane needed to complete a substance abuse assessment, attend individual therapy, engage in domestic violence victim services, and complete parental education to include classroom education and parent mentoring.

¶ 18     DCFS filed a second report with the circuit court on November 7, 2019. The second DCFS report stated that Helane's recommended services were to complete a substance abuse assessment and follow all recommendations for treatment, complete a mental health assessment and follow all recommendations for treatment, complete domestic violence victim services, complete parenting instruction, maintain a legal means of income, and obtain safe and stable housing. The second DCFS report stated that Helane was receiving individual therapy and had participated in a weekly group for women. It further indicated that Helane had begun a substance abuse assessment, and that parenting instruction and coaching had begun during her parent-child visits.

¶ 19     The second DCFS report also stated that Helane continued to maintain a relationship with Adam, but that the relationship was tumultuous. The second DCFS report further stated that Helane remained on probation for a conviction of unlawful possession of a controlled substance and that a charge of domestic battery/physical contact for an altercation between her and Adam was still pending. The second DCFS report recommended to the circuit court that it find Helane unable and unwilling to care for, protect, train, educate, supervise, or discipline the twins and it that it would be consistent with the health, welfare, and safety of the minor children, and in their best interests, to be

made wards of the court. The second DCFS report also recommended that guardianship and custody of the twins remain with DCFS and that an appropriate permanency goal would be return home within one year.

¶ 20    The circuit court held a dispositional hearing pursuant to section 2-23 of the Act (705 ILCS 405/2-23 (West 2018)) on November 15, 2019. At the dispositional hearing, Helane agreed with the dispositional recommendations of the second DCFS report. As such, the circuit court entered a written order the same day consistent with the second DCFS report, finding Helane unfit and unable to care for the twins and that reasonable efforts and appropriate services aimed at family reunification had been made to keep the twins in the home, but that such efforts had not eliminated the necessity for removal and leaving the twins in the home was contrary to their health, welfare, and safety. The circuit court's dispositional order found that the twins were neglected and made the twins wards of the court. The circuit court's dispositional order further found the service plan to be appropriate, placed guardianship and custody of the twins with DCFS, and admonished Helane that her failure to correct the conditions which required the minor children to be taken into care could result in the loss of custody and/or termination of her parental rights.

¶ 21    On February 14, 2020, DCFS filed a third report with the circuit court. The third DCFS report again stated that Helane's recommended services were to complete a substance abuse assessment and follow all recommendations for treatment, complete a mental health assessment and follow all recommendations for treatment, complete domestic violence victim services, complete parenting instruction, maintain a legal means of income, and maintain safe and stable housing. The third DCFS report stated that Helane

9

had engaged in mental health and substance abuse services in September 2019, and that she had been recommended for weekly individual therapy and a weekly therapy group for women with anger management issues. The third DCFS report further stated that Helane had attended 10 individual sessions along with 11 group sessions.

¶ 22 Additionally, the third DCFS report stated that Helane had not maintained her engagement in substance abuse treatment and would need to engage in a new substance abuse assessment. The third DCFS report also stated that Helane had reported that she had a prescription for Xanax, but that the prescription had not been provided for verification. As such, the third DCFS report stated that Helane would need to maintain her engagement with her mental health and substance abuse providers in order to determine if her use of Xanax and marijuana was appropriate given her substance abuse history.

¶ 23 The third DCFS report went on to state that Helane had resided with Adam off-and-on and that their relationship continued to be turbulent. The third DCFS report noted that law enforcement had been called to the residence by Adam on January 10 and 11, 2020, and on February 2, 2020, law enforcement was called to the residence by Helane. The third DCFS report stated that there was a discrepancy between the level of domestic violence that Helane and Adam reported in their relationship. The third DCFS report also stated that a visit with the twins ended early due to an altercation between Helane and Adam, when Helane confronted Adam concerning his threat to contact the police regarding her drug use in the home. The third DCFS report went on to state that Helane had reported that she had left Adam on February 10, 2020, and was residing with the father of her daughter. Finally, the third DCFS report stated that the relationship between Helane and Adam continued to

10

be a concern as Helane had a criminal charge for domestic battery and Adam had a criminal charge for violating an order of protection proceeding in the court system for incidences between them.

¶ 24 On February 21, 2020, the circuit court conducted a permanency hearing pursuant to section 2-28 of the Act (*id*. § 2-28) and entered a written order the same day. The circuit court's written permanency order stated that the circuit court had determined that the appropriate permanency goal was return home within 12 months due to Helane's failure to correct the conditions that had brought the twins into care. The circuit court's written permanency order also stated that Helane had not made reasonable and substantial progress, nor had she made reasonable efforts, toward returning the minor children home. The circuit court's written permanency order further found that the services contained in Helane's service plan were appropriate and reasonably calculated, and directed the minor children to remain in the guardianship and custody of DCFS.

¶ 25 DCFS filed a fourth report with the circuit court on August 13, 2020. The fourth DCFS report indicated that Helane had completed substance abuse classes on July 28, 2020. The fourth DCFS report further stated that Helane had appeared to be doing well from late April until the beginning of June 2020; however, during that period she had sought out a physician to prescribe Xanax and did not appear to be using the medication as prescribed. The fourth DCFS report stated that Helane had appeared lethargic and sedated during two of her therapy sessions and that, initially, she refused to sign a release for her substance abuse counselor to talk to the physician that had prescribed the Xanax. The fourth

DCFS report went on to indicate that Helane did sign the release, but then stated that she was no longer using Xanax and was only using marijuana.

¶ 26 The fourth DCFS report further stated that Helane had moved in and out of Adam's residence and that the status of their relationship, along with Helane's living arrangements, were unclear because Helane was not being honest. As such, the fourth DCFS report stated that Helane had failed to establish a stable home for a consistent period of time since the case was opened. The fourth DCFS report stated Helane continued to attend mental health counseling, but that she was not consistent and did not appear to be making any progress. The fourth DCFS report also stated that Helane's therapist described Helane's relationship with Adam as "toxic and co-dependent" and that both parties were "master manipulators." The fourth DCFS report stated that both Helane and Adam had shown bruises and marks on their person to the individual supervising visitations with the twins, which they reported were caused by the other party during fights. The fourth DCFS report stated that both parties' therapists had reported that the relationship between Helane and Adam was not safe for the children.

¶ 27 The fourth DCFS report went on to state that Helane had pleaded guilty to disorderly conduct and that the domestic battery charge was dropped. Helane was sentenced to one-year conditional discharge, a fine of $400, and ordered to successfully complete counseling. The fourth DCFS report stated that Helane remained unemployed, but that she had met with a resource person to assist with the obtainment of housing and employment. The fourth DCFS report further stated that Helane had not made progress toward correcting the conditions that led to the twins' removal from the home and that Helane had not made

reasonable and substantial progress, or reasonable and substantial efforts, toward the return of the twins to the home. The fourth DCFS report recommended to the circuit court that the permanency goal remain return home within 12 months and that guardianship and custody of the twins remain with DCFS.

¶ 28 Attached to the fourth DCFS report was a copy of DCFS's service plan of June 29, 2020. The service plan stated that Helane refused to take two drug screenings and had tested positive for marijuana and benzodiazepines on the random drug test she did take. The service plan stated that Helane's continued use of substances, while involved with DCFS and following the minor children's placement in foster care, reflected an ongoing problem. The service plan stated that Helane had completed a substance abuse assessment and was receiving treatment; however, Helane was rated as unsatisfactory progress regarding substance abuse since she had not cooperated with the drug testing.

¶ 29 Helane also was rated as unsatisfactory progress on the DCFS service plan for individual therapy due to her guardedness surrounding some topics and seeking out a prescription for Xanax to treat her mental health symptoms. Helane was further rated as unsatisfactory progress on her domestic violence services since she continued to have contact with Adam. Finally, the DCFS service plan stated that Helane had engaged in some parenting instruction and had incorporated some of her learned skills during her visits with the twins, but was rated as unsatisfactory progress on her parenting services.

¶ 30 On January 19, 2021, CASA filed a second report with the circuit court. The second CASA report stated that Helane was not employed, was in a relationship with Adam, and was living with Adam in his home. The second CASA report stated that Helane had weekly

13

visits with the twins and that the visits went well. The second CASA report also indicated that Helane had completed substance abuse counseling and had a relapse prevention plan in place. According to the second CASA report, Helane had maintained her sobriety for several months and was continuing her mental health services. The second CASA report recommended to the circuit court that the twins remain in their current foster home, that Helane continue to make progress by going to individual therapy, that Helane engage in parenting classes to strengthen her parenting skills, and that the permanency goal remain return home in 12 months.

¶ 31     On January 21, 2021, DCFS filed a fifth report with the circuit court. The fifth DCFS report stated that Helane had been residing with Adam since July 2020, and that she had reported that they were getting along well and intended to remain together. The fifth DCFS report further indicated that Helane had completed substance abuse treatment in July 2020, and had voluntarily remained engaged in substance abuse treatment until December 23, 2020. The fifth DCFS report also indicated that Helane continued to attend mental health counseling and that her domestic violence services were being addressed through her individual therapy. According the fifth DCFS report, Helane's therapist had reported that she had seen a great deal of improvement in Helane's relationship with Adam. The fifth DCFS report stated that Helane was not employed but had adequate income and housing while she resided with Adam and that Helane continued to be engaged in parenting education.

¶ 32     The fifth DCFS report went on to state that Helane remained on probation and was in compliance with the conditions of her probation. The fifth DCFS report also stated that

DCFS intended to request discretion from the circuit court for Helane to have unsupervised, increased visitation with the twins in order to move toward reunification. The fifth DCFS report stated that Helane had made reasonable and substantial progress, along with reasonable and substantial efforts, toward the return of the twins to the home and that she had engaged in the services as recommended by DCFS. The fifth DCFS report stated that Helane had demonstrated stability in her relationship and living arrangement during the past several months. As such, the fifth DCFS report recommended to the circuit court that the permanency goal remain return home within 12 months.

¶ 33   On January 29, 2021, the circuit court entered a written permanency order which stated that a permanency hearing was conducted the same day; however, there is no record of proceeding for the January 29, 2021, hearing within the record on appeal. The circuit court's written permanency order found that the services contained in Helane's service plan were appropriate and reasonably calculated and maintained a permanency goal of return home within 12 months based upon Helane having made significant progress and having been compliant with her services, but that the conditions that caused the minor children to be removed from the home had not been entirely corrected. The circuit court's written permanency order also stated that the circuit court had found that Helane had made reasonable and substantial progress, along with reasonable and substantial efforts, towards returning the twins home. As such, the circuit court's written permanency order directed that the guardianship and custody of the twins remain with DCFS.

¶ 34   On April 5, 2021, DCFS filed a service plan dated January 5, 2021, with the circuit court. The DCFS service plan of January 5, 2021, stated that Helane was rated as achieving

satisfactory progress on her substance abuse services based on Helane having completed substance treatment and maintaining sobriety for several months. Helane also received a satisfactory progress rating for her mental health services based on Helane reengaging in mental health treatment in March 2020 and consistently attending. Helane next received a satisfactory progress rating on her domestic violence services based on Helane's individual and couples counseling that had appeared to have greatly improved the dynamics between Helane and Adam. Finally, Helane received a satisfactory rating regarding financial support and housing based on Helane obtaining assistance to become more independent. The DCFS service plan stated that Helane appeared to be functioning well in all aspects of her life.

¶ 35    The January 5, 2021, DCFS service plan, however, went on to state that Helane was rated as unsatisfactory progress with her parenting services. The DCFS service plan stated that Helane had engaged in parenting instruction and had demonstrated good skills with the twins, but needed to increase her understanding of the children's needs and how to effectively address them. The DCFS service plan also stated that Helane was compliant with the conditions of her probation, but that Helane needed to resolve all criminal matters and refrain from further criminal activity so that she could provide a stable environment for the twins.

¶ 36    CASA filed a third report with the circuit court on April 12, 2021. The third CASA report stated that, although the relationship between Helane and Adam had appeared to be stable for nearly a year, on March 5, 2021, it was reported that they were no longer in a relationship. According to the third CASA report, Adam reported that the split was due to

16

the amount of marijuana Helane used monthly and the cost that it incurred. The third CASA report stated that Helane was not employed and stayed with a relative until reconciling and returning to live with Adam on April 5, 2021. The third CASA report went on to state that Helane and Adam had again ended their relationship on April 10, 2021, and that Helane's whereabouts were unknown at that time. As such, the third CASA report recommended that Helane pursue a viable source of income and stable housing along with engaging in parenting classes to strengthen her parenting skills. The third CASA report further recommended that, due to the amount of time that the twins had been in care, the unstable relationship pattern between Helane and Adam, and Helane's lack of motivation to secure employment and provide a home for her children, the permanency goal should be changed to substitute care pending court determination of termination of parental rights.

¶ 37    DCFS filed a sixth report with the circuit court on April 14, 2021. The sixth DCFS report also stated that the relationship between Helane and Adam had dissolved and that Adam had reported that one reason for the conflict in the relationship was Helane's usage of $400 of marijuana, purchased off the street, each month. Adam further expressed concerns about Helane's ability to care for the minor children while using marijuana. The sixth DCFS report stated that Helane, however, reported that Adam was controlling, and that Adam had directed Helane to move out of the residence when Helane had left the home to visit a relative.

¶ 38    According to the sixth DCFS report, Helane and Adam reconciled and then met with DCFS to address the issue of the couple's most recent instability. At the meeting, Helane and Adam stated to DCFS that they intended to remain together and work on their issues.

Helane and Adam, however, separated again, and the sixth DCFS report stated that Helane was residing with a relative. The sixth DCFS report stated that the volatility of the relationship between Helane and Adam would be an unhealthy environment for the minor children to return to and indicated that Helane was not willing to put the children's need for stability above her own desire to maintain a dysfunctional relationship with Adam.

¶ 39    The sixth DCFS report went on to state that Helane had not maintained employment during the life of the case and continued to be dependent on Adam for income, housing, and transportation. The sixth DCFS report stated that Helane continued her visits with the minor children, but that the visits remained supervised, and that Helane struggled to attend to the children's needs by herself. The sixth DCFS report also stated that the twins had been in care for 627 days and that many of the issues that were present at the time of their placement persisted. Finally, the sixth DCFS report stated that Helane had made reasonable and substantial efforts toward the return of the minor children based upon her engagement in mental health services, domestic violence education services, and substance abuse treatment. The sixth DCFS report, however, stated that Helane had not made reasonable progress towards toward the return of the minor children because she continued to abuse marijuana and had failed to establish stable housing and an income. As such, the sixth DCFS report recommended to the circuit court that the permanency goal of return home within 12 months be maintained, and that guardianship and custody of the minor children remain with DCFS.

¶ 40    On May 27, 2021, the circuit court conducted a permanency hearing pursuant to section 2-28 of the Act (*id.* § 2-28). At the hearing, Helane informed the circuit court that

18

she agreed with DCFS's recommendation of a finding of reasonable efforts, but not substantial progress, be made on her behalf with a permanency goal of return home within 12 months. The circuit court entered a written order the same day finding that the services contained in Helane's service plan were appropriate and reasonably calculated and that Helane had made reasonable and substantial efforts, but had not made reasonable and substantial progress, toward the return of the minor children to the home. The circuit court's written order stated that Helane had engaged in and completed a majority of her recommended services, but that the instability in her relationship with Adam remained unresolved. As such, the circuit court's written order set a permanency goal of return home within 12 months and directed that the guardianship and custody of the minor children remain with DCFS.

¶ 41 DCFS filed a service plan dated June 24, 2021, with the circuit court on July 19, 2021. The service plan of June 24, 2021, stated that Helane and Adam ended their relationship in February 2021, then resumed the relationship in late March 2021, and then ended it again in late April 2021. The service plan stated that Adam had requested a joint visit in his home on Mother's Day with Helane and the twins. Following the visit, the service plan stated that Adam had reported that Helane refused to leave his home and grabbed a knife, so Adam was forced to call law enforcement. The service plan then stated that in June, Adam reported that he and Helane were discussing getting back together "just as roommates." The June 24, 2021, service plan went on to state that Helane was residing in an apartment with a male roommate and had reported that she was employed.

¶ 42 The June 24, 2021, service plan further stated that Helane was rated as satisfactory progress on her substance abuse services, although she continued to use marijuana without a prescription as such usage was legal in Illinois and was considered in compliance with treatment. The service plan also stated that Helane was rated as satisfactory progress on her mental health services. The service plan, however, stated that Helane was rated as unsatisfactory progress on her domestic violence services since the dynamics between her and Adam continued to be unhealthy for much of the reporting period. The service plan also stated that Helane was rated as unsatisfactory progress on housing and income as she continued to be somewhat dependent on others for financial support and housing. The service plan stated that during much of the reporting period, Helane had been dependent on Adam and relatives for housing, living, expenses, and transportation and that she currently had a roommate. The service plan stated that Helane needed to demonstrate that she could maintain her employment and contribute to a safe, stable living arrangement for the twins while maintaining healthy relationships. The service plan went on to state that Helane was rated as unsatisfactory progress on her parenting services based upon her living instability and frequent moves, which made maintaining consistency difficult. Finally, the service plan stated that Helane was rated as unsatisfactory progress on her compliance with the conditions of her probation because, although she had been successfully discharged from probation in Moultrie County, a petition to revoke her conditional discharge in Edgar County had been filed on June 22, 2021.

¶ 43 Along with the DCFS service plan of June 24, 2021, DCFS filed a seventh report with the circuit court on July 19, 2021. The seventh DCFS report reflected the same

information contained in the DCFS service plan of June 24, 2021, but in addition, stated that Helane was maintaining communication with Adam despite having reported that they were no longer in a relationship and being advised that her unstable relationship with Adam was the main barrier to the return of the minor children. The seventh DCFS report stated that Helane had made reasonable and substantial efforts toward the return of the minor children to the home by engaging in her services, but that she had not made reasonable and substantial progress toward the return of the minor children to the home since she needed to demonstrate stability over a period of time. As such, the seventh DCFS report recommended to the circuit court that the permanency goal remain return home within 12 months and that guardianship and custody of the twins remain with DCFS.

¶ 44    CASA filed a fourth report with the circuit court on July 22, 2021. The fourth CASA report stated that Helane had not demonstrated prolonged stability throughout the life of the case with regard to her inconsistent, dysfunctional, and at times, volatile, romantic relationship with Adam. The fourth CASA report stated that on May 27, 2021, Helane had reported that she had secured full-time employment and had obtained an apartment; however, on July 20, 2021, a caseworker reported that Helane had returned to Adam's residence and that it was unknown whether Helane had continued her employment. As such, the fourth CASA report informed the circuit court that, due to the instability demonstrated by Helane and Adam, it was not comfortable moving forward with a permanency goal of return home and requested that the circuit court conduct a hearing in three months to evaluate the circumstances.

21

¶ 45    On August 26, 2021, the State filed a motion for termination of parental rights (motion to terminate). The motion to terminate alleged that Helane was an unfit person as defined in section 1(D)(m)(i) of the Adoption Act (750 ILCS 50/1(D)(m)(i) (West 2020)) for failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children from the home during the nine-month period of August 16, 2019, to May 16, 2020, following the adjudication of neglect on August 16, 2019. The motion to terminate further alleged that Helane was an unfit person as defined in section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii)) for failing to make reasonable progress toward the return of the minor children during the same time period. The State's motion for termination requested that Helane's parental rights be terminated regarding Liam and Levi and that DCFS be granted authority to consent to the adoption of the twins. The circuit court set the State's motion to terminate for hearing on September 28, 2021; however, due to several medical issues of the attorneys, the hearing was continued until December 29, 2021.

¶ 46    On December 29, 2021, the circuit court held a hearing[5] on the fitness portion of the State's motion to terminate Helane's parental rights regarding Liam and Levi. At the hearing, the State called Kathleen (Kathy) Davis as its only witness. Kathy testified that she had been employed by DCFS since July 1, 2014, and that she had been the DCFS caseworker on this matter since July 2019. Kathy stated that there had been three

---

[5]As indicated earlier, Adam and Tony S. were also respondents in the circuit court proceedings and, as such, the witnesses offered testimony regarding all three respondents at the hearing. This court, however, will only summarized the relevant testimony as it relates to Helane since the circuit court's fitness findings regarding Adam and/or Tony S. are not at issue in this appeal.

investigations involving substance abuse and/or domestic violence that had resulted in the twins, Liam and Levi, being taken into the care of DCFS. Kathy stated that the substance abuse related to Helane and that the domestic violence related to both Helane and Adam. Kathy testified that Helane and Adam had never been married during the life of the case.

¶ 47    Concerning services, Kathy testified that Helane's services included providing safe and stable housing, providing an adequate income, completing parenting services, completing domestic violence education services, completing a substance abuse assessment and following the recommendations of the assessment, and completing a mental health assessment and following the recommendations of the assessment. Kathy stated that during the time period of August 16, 2019, to May 16, 2020, Helane struggled with the use of Xanax and marijuana, but that Helane had completed substance abuse treatment in July 2020. Kathy testified that Helane continued her marijuana use after treatment, but that marijuana use was legal in Illinois. Kathy went on to testify that marijuana, although legal, can impair an individual's ability to function much like alcohol, which is also legal. Kathy stated that she was not aware of any harm to Helane or anyone else due to Helane's marijuana use.

¶ 48    Kathy further testified that Helane was diagnosed with anxiety, depression, and attention deficit hyperactivity disorder (ADHD), and had been prescribed medication to treat the anxiety and ADHD. Kathy stated that Helane had attended mental health counseling during the time period of August 16, 2019, to May 16, 2020, but that she did not complete her mental health counseling during that time period. Kathy stated that the COVID lockdown occurred during March through July 2020, which included the last two

23

months of the relevant time period, and that she believed the lockdown effected Helane's access to her substance abuse services. Kathy went on to state that at some point during that time period, video counseling was resumed. Kathy testified that at no time during that time period did she receive any information from the counseling center that Helane had failed to attend any sessions and that Helane had been consistently attending counseling until the COVID lockdown when the services came to a sudden halt.

¶ 49    Concerning Helane's domestic violence services, Kathy testified that Helane had addressed her role regarding domestic violence at different times, but that Helane was still engaged in counseling and had not completed the services. Kathy testified that there had been periods of time where the relationship between Helane and Adam appeared stable, but then there were periods of time that Helane and Adam would both call and tell her terrible things about each other. Kathy stated that, in the spring of 2020, Helane had sent her pictures that showed Helane with a black eye and bruising on her arms that Helane alleged were caused by Adam. Kathy stated that Helane had reported that Adam was violent toward her after two or three of the break-ups, and that after some of the break-ups, Helane would send Kathy hateful text messages that Helane had received from Adam.

¶ 50    Kathy further stated that Adam would tell her that Helane did not help around the house and that Helane abused marijuana to the point that she could not care for the minor children. Kathy testified that when the relationship was going well, she would hear good things from Helane and Adam, and then after Helane and Adam would break up, she would hear very negative things. According to Kathy's testimony, Helane and Adam had broken up 8 to 10 times during the life of the case and 3 or 4 times during the time period of August

24

16, 2019, to May 16, 2020. Kathy testified that the allegations of violence were certainly made during the time period of August 16, 2019, to May 16, 2020, but that she did not believe there were any allegations of physical abuse during 2021.

¶ 51    Kathy stated that the last time she spoke with Helane and Adam, they were living together again, and things were going well. For the majority of the life of the case, Kathy stated that Helane and Adam had resided together and, at times, had resided together for a period that would have exceeded nine months. Kathy testified, however, that she had concerns about the twins returning to such ongoing instability in the relationship. Kathy stated that instability in a couple's relationship was harmful to the children in the home, especially when there had been violence. Kathy testified that the biggest barrier for Helane to have the minor children returned to her care was providing a consistent, stable home.

¶ 52    Kathy also testified that Helane's parenting services were ongoing, and that Helane had been making progress, but that Helane's parenting services had not been completed. Kathy testified that Helane was not employed during the time period of August 16, 2019, to May 16, 2020, and that Helane had short periods of employment after that time, such as a month or six weeks, but no consistent employment. Kathy acknowledged that Helane had adequate income and housing when she resided with Adam, and that she had somewhere else to live and employment when they separated.

¶ 53    Kathy testified that Helane had not been able to provide a safe and stable home in any of the nine-month periods since the adjudication of neglect in this case. During the time period of August 16, 2019, to May 16, 2020, Kathy testified that Helane resided mostly with Adam and that Adam had a suitable residence, but with regard to considering

25

a residence as safe and stable housing, Kathy stated that it was more than just a suitable residence. Kathy testified that a safe and stable home included the environment of the home, which included any conflicts in the relationship.

¶ 54    Kathy went on to testify that Helane had utilized her supervised visits with the twins one day every week, but that Helane had never proceeded past supervised visits because she was not making progress toward the return home of the twins. Kathy further testified that the twins had been in care for approximately 880 days, since July 2019, and that there had not been a nine-month period during the life of the case that Kathy felt Helane's home environment was stable enough to have recommended that the twins be returned to the home.

¶ 55    Kathy testified that Helane had received copies of her service plans and was advised of her right to object to any portion of a service plan, but that Helane had never objected to any aspect of her service plans. Finally, Kathy testified that during the time period of August 16, 2019, to May 16, 2020, Helane failed to make reasonable progress concerning substance abuse, mental health, safe and stable housing, and domestic violence education services such that the children could have been returned to the home within a reasonable period of time.

¶ 56    The State rested and counsel for Helane made a motion for a directed finding that the State had not proven by clear and convincing evidence that Helane was an unfit person. Helane's counsel argued that the time period of August 16, 2019, to May 16, 2020, was shortened by two months due to COVID such that the State failed to prove an entire nine-month period. The circuit court found that the State had presented some evidence as it

26

related to each of the allegations and, as such, denied Helane's motion for a directed finding.

¶ 57   Next, Helane was called as witness to testify on her own behalf. Helane testified that she was 29 years old and the mother of the twins, Liam and Levi. Helane stated that she resided with Adam in Paris, Illinois, and that she was permitted to visit with the twins at that home once a week for four hours. Helane stated that the visits were supervised and that she had only missed one or two visits with the twins when she was ill. Helane stated that Kathy had been her caseworker for the life of the case and that Helane had cooperated with Kathy throughout the life of the case.

¶ 58   Helane testified that the last time she and Adam had separated was around May 2021, for approximately two months. Helane stated that they had separated because it seemed like they were going "around and around" and that she was really upset and had just left. Helane acknowledged that it was around that time that Adam had reported that she had pulled a knife on him, which Helane denied doing. Helane testified that she was doing the dishes, and that Adam overexaggerated it. Helane stated that, since she initially moved in with Adam 2½ years ago, they had separated approximately six times.

¶ 59   Helane testified that she had gotten the order of protection against Adam at the encouragement of a DCFS investigator, but she could not recall whether she had alleged any physical violence on Adam's part. Helane stated that she had requested the order of protection be dismissed since she wanted to work things out with Adam and was not actually in fear for her life. After she separated from Adam, Helane stated that she had obtained an apartment with a friend and employment at a factory that makes cameras for

vehicles. As such, Helane testified that during the period she was separated from Adam, she had a home, an income, and all necessities.

¶ 60　Helane went on to testify that she had completed her substance abuse assessment and treatment, including continuing her treatment beyond what was required. Helane stated that she did not currently have a prescription for Xanax, but that when she was using Xanax during the time period of August 16, 2019, to May 16, 2020, the Xanax was obtained legally through a prescription from a physician. Helane testified that she had never misused Xanax and that she had informed her substance abuse counselor regarding her use of Xanax. Helane, however, admitted that she had abused Xanax prior to the twins being removed from the home and that after being criminally charged with illegal possession in Moultrie County, she went to a physician to obtain the Xanax legally. Helane stated that the criminal charges were brought prior to the removal of the twins and that she had successfully completed her probation, which included passing all of her random drug tests. Helane denied that her substance abuse counselor ever suggested that Helane was sedated as a result of the overuse of Xanax, but did acknowledge that her counselor lectured her about the use of Xanax. Helane testified that she had not stopped using Xanax until after May 2020.

¶ 61　Helane also testified that she had completed her mental health treatment in January 2021. She further testified that, during the time period of August 16, 2019, to May 16, 2020, she had engaged in domestic violence services and had benefited from those services. Finally, Helane testified that she regularly engaged in parenting instruction during her visits

28

with the twins and that she was not currently employed but relied on Adam for support. No other witness was called on Helane's behalf at the hearing.

¶ 62    Next, Adam called Alicia S. to testify on his behalf.[6] Alicia stated that she was 19 years old and Adam's daughter. Alicia testified that she was present and had observed visits between Helane and the twins, but did not offer any relevant testimony regarding Helane's fitness.

¶ 63    Adam was then called to testify on his own behalf. Adam stated that he is the father of the twins, Liam and Levi. Adam testified that he moved into his current residence in April 2019, and that the twins were born in May 2019. Adam stated that Helane had also moved in at the same time and that Helane had resided there until July 11, 2019, which was a few days after the July 4, 2019, incident where Adam had called law enforcement for assistance due to Helane's ingestion of antipsychotic medications. Adam stated that the July 4, 2019, incident resulted in a domestic violence charge being brought against Helane and Helane obtaining an emergency order of protection against him. Adam stated that on July 26, 2019, he was arrested for violating the order of protection by texting Helane and that he later pleaded guilty to disorderly conduct. Adam testified that he never committed any violent act against Helane, but that he did have to defend himself against Helane a couple of times. Adam stated that Helane returned to the residence approximately a week, or a week and a half, after the twins were taken into care.

---

[6]As stated earlier, Adam's parental rights regarding the Liam and Levi are not at issue in this appeal and, as such, we will only summarize the testimony of the witnesses called on Adam's behalf as it relates to Helane.

¶ 64 Adam testified that he could not give an exact time frame of how long Helane stayed at the residence, but stated that Helane was very distraught about the twins being taken into care and that she was not very rational at the time. Adam stated that there were several occasions when Helane had left and come back during the time the twins were taken into care to the end of 2019, but that they were all brief periods of time. From the beginning of 2020 to May 2020, Adam stated that he was "pretty sure" that he and Helane had resided together. According to Adam's testimony, Helane moved out again in the summer of 2020, for approximately two weeks, and then moved out again on March 4, 2021, after they had completed couples counseling.

¶ 65 Adam testified that COVID had affected Helane's ability to complete her services. Adam stated that Helane was very distraught and that her anxiety went "through the roof" when COVID occurred and they could not have in-person visits with the twins. Adam stated that it took about two weeks after COVID hit for Helane to get counseling started back up and that the counseling was conducted via telephone, which also caused Helane anxiety.

¶ 66 Adam testified that, other than the initial incident, Helane had not engaged in domestic violence against him. Concerning the incident with the knife, Adam testified that he and Helane were arguing, and that Helane was doing the dishes. Adam stated that Helane had grabbed the knife, but that Helane did not threaten or come at him with the knife. Adam stated that he left the residence, called law enforcement, and when law enforcement arrived, he informed them that they had been arguing and that he had asked Helane to leave, but that she had refused. Adam testified that he did not mention the knife to law

enforcement and that Helane agreed to voluntarily leave the residence to defuse the situation. Adam stated that Helane was gone approximately two months and then moved back into the residence. Adam testified that there had not been any police reports against Helane since her initial arrest at the beginning of this case.

¶ 67    Adam testified that he had tried to assist Helane with her drug usage by encouraging her to continue counseling and by not allowing her to do drugs in the residence. Adam stated that Helane had stopped her drug usage and that she had even stopped smoking marijuana in August 2021. Adam stated that the Xanax Helane had previously used was prescribed by a doctor and that she used the Xanax within the parameters of that prescription.

¶ 68    Adam went on to testify that it was his belief that he and Helane were capable of providing the twins with proper care and maintenance if the twins were returned to the home. Adam stated that the issues he and Helane had during the life of the case were caused by the children being taken away from them because Helane blamed him, and he blamed Helane. Adam stated that it had been rough on their relationship. No further witnesses were called at the hearing.

¶ 69    After the parties' closing arguments, the circuit court stated as follows:

"The question before the Court today is during that nine-month period was reasonable progress made, were reasonable efforts made, and it's hard to argue, poke a hole in [the State's] argument that during this nine-month period the services were not corrected. Progress was not made, and there's simply no argument to be made that during that period this Court or any court

31

could have returned the children home to you, and that's what the Court is reviewing today and the evidence has proven today by clear and convincing evidence as it relates to reasonable progress that the State has met their burden.

Now, as it relates to the Motion to Terminate for both parents as it relates to reasonable efforts, I don't think I need to make a finding on that today. One finding is sufficient for the Motion to Terminate Parental Rights. I believe [Adam] did make reasonable efforts as far as his domestic violence, mental health, and substance abuse treatment. Now, though, I'd also take the evidence as it relates to [Helane] shows that she was not able to complete these services during the nine-month time period, and I am sympathetic to some degree to the argument made by counsel that we were in the middle of a pandemic *** but the testimony I think from even [Adam] related to the impact of Covid was a week or two, and the testimony today was we are two months beyond completing even the substance abuse within our nine-month time period, so Covid alone does not explain missing those deadlines, and in fact, the conclusion the Court draws on that again is that [Helane] did not make reasonable efforts during that nine-month time period.

After a finding of unfitness we proceed, the next stage in this proceeding is the best interest hearing."

The circuit court then set the matter for a best interest hearing on January 28, 2022.

32

¶ 70   Due to several delays, including one for inclement weather that closed the circuit court, the best interest hearing was conducted on March 2, 2022. The circuit court heard testimony from six witnesses,[7] including Helane. At the conclusion of the best interest hearing, the circuit court stated as follows:

"I want to take a few moments to discuss the Court's previous findings related to unfitness *** because I believe they are appropriate today as it relates to some of these factors, and it's going to provide us a little bit of context as to the evidence we've heard today and the rulings I'm going to make.

[Counsel for Helane] is correct; the issues that originally led the children into care related to both substance abuse and mental health issues of [Helane]. There's also in those reports issues related to [Adam] about enabling some of that behavior. And perhaps as a by-product of those behaviors, domestic violence was present in the home.

And we've heard throughout the life of this case in regards to the on-again/off-again nature of the relationship, but it's more than just that. It's more than entering the home, leaving the home to create this unstable environment.

This was a toxic relationship where throughout the life of the case, each of you had Orders of Protection against each other. [Adam] was arrested for

---

[7] Because the circuit court's finding on the best interest of the minor children is not at issue in this appeal, this court will not set forth a summary of the witnesses' testimony at the best interest hearing.

33

violating an Order of Protection. [Helane] was arrested for domestic battery, and even up to—and these—this is in addition to allegations that each of you made to your caseworkers throughout the lives of this case to additional incidents of domestic violence. And these occurred though the life of this case up unto just a month or two prior to the Motion to Terminate being filed. The Court heard evidence that [Helane] threatened [Adam] with a knife and the police were called, and this is two years into the life of this case.

So at no point leading up to the filing of this Motion to Terminate could the Court believe it was appropriate or safe to return these children to the home. And today I can't even say it would be safe in the foreseeable future that these children would be returned home.

* * *

[Helane] in some respects to this case made efforts, but that's not the sole question that the Court had to answer at the fitness hearing. The question was were the conditions corrected, and these efforts, frankly, were superficial; that is, you went through the motions, but they had no impact on what we were truly concerned about, and that was the domestic violence, the issues that created an unstable and an unsafe environment for your children, and those issues were never correct.

And it's not just that they weren't correct[ed]. It was each of you were made perfectly aware, perfectly clear throughout the life of the case that it was your romantic relationship, the volatility of your relationship that was

34

prohibiting you from achieving your goal. That was the barrier to returning the kids to you. And each of you made a decision to prioritize your relationship over your children."

¶ 71 The circuit court then went through its findings relating to the factors of best interest and granted the State's motion to terminate parental rights. The circuit court entered a written order the same day, March 2, 2022, stating that Helane was found to be an unfit person as defined in sections 1(D)(m)(i) and 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(i), (ii) (West 2020)) on December 29, 2021. The circuit court's written order further stated that it had found that it was in the best interest of the minor children, and of the public, that all residual and natural parental rights and responsibilities of Helane be terminated. As such, the circuit court's written order terminated the parental rights and responsibilities of Helane regarding the twins, Liam and Levi.

¶ 72 Helane now appeals the circuit court's judgment terminating her parental rights arguing that the circuit court's finding that she was an unfit person was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the circuit court.

¶ 73                                    II. ANALYSIS

¶ 74 "A parent's right to raise his or her biological children is a fundamental liberty interest, and the involuntary termination of such right is a drastic measure." *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. The Act (705 ILCS 405/1-1 *et seq.* (West 2020)), along with the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2020)), governs the proceedings for the termination of parental rights. *In re D.F.*, 201 Ill. 2d 476, 494 (2002). The Act

provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2020). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds of unfitness enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). 705 ILCS 405/2-29(2), (4) (West 2020); *In re D.T.*, 212 Ill. 2d 347, 352-53 (2004). Even if the State alleges more than one count of unfitness, only one count needs to be proven to find a parent unfit. *In re J.A.*, 316 Ill. App. 3d 553, 564 (2000). If the court finds the parent unfit, the State must then show that termination of parental rights would serve the minor child's best interests. 705 ILCS 405/2-29(2) (West 2020); *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 28. In this matter, Helane does not challenge the circuit court's finding that termination of her parental rights was in the best interest of the minor children. As such, our analysis will focus on the circuit court's fitness determination.

¶ 75 A determination of parental unfitness involves factual findings and credibility assessments that the circuit court is in the best position to make, and a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005).

¶ 76 Here, the circuit court determined that the State had proven, by clear and convincing evidence, two grounds of unfitness against Helane. Specifically, the circuit court found that Helane was an unfit person as defined in section 1(D)(m)(i) of the Adoption Act (750 ILCS

36

50/1(D)(b) (West 2020)) for failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minor children from the home during the nine-month period from August 16, 2019, to May 16, 2020, following the adjudication of neglect on August 16, 2019. The circuit court further found that Helane was an unfit person as defined in section 1(D)(m)(ii) of the Adoption Act (*id.* § 1(D)(m)(ii))), for failing to make reasonable progress toward the return of the minor children to the home during the same time frame. We will begin our analysis with the circuit court's finding that Helane was an unfit person for failing to make reasonable progress toward the return of the minor children to the home as it is dispositive to Helane's claim that the circuit court erred in finding her to be an unfit person.

¶ 77     Reasonable progress is an objective standard that is not concerned with a parent's individual efforts and abilities. *In re D.D.*, 309 Ill. App. 3d 581, 589 (2000). We review reasonable progress using an objective standard relating to making progress toward the goal of returning the children home. *In re R.L.*, 352 Ill. App. 3d 985, 998 (2004). Reasonable progress requires measurable or demonstrable movement toward the goal of reunification, and reasonable progress can be found if the trial court can conclude that it can return the children to the parent in the near future. *In re J.H.*, 2014 IL App (3d) 140185, ¶ 22. As our supreme court stated in *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001):

> "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of

37

other conditions which later become known and which would prevent the court from returning custody of the child to the parent."

¶ 78     Helane argues that the circuit court's finding that Helane was an unfit person was against the manifest weight of the evidence due to the numerous delays that were present during the time period of August 16, 2019, to May 16, 2020. Helane argues that the delays were not her fault and that the delays prevented her from making reasonable progress during that time period. Helane argues that the first delay was the dispositional hearing being conducted past the statutory required deadline. Helane states that the order of adjudication was entered on August 16, 2019, and that pursuant to section 2-21(2) of the Act (705 ILCS 405/2-21(2) (West 2020)), the circuit court was required to conduct the dispositional hearing no later than 60 days from the entry of the order of adjudication. The dispositional hearing was not conducted until November 15, 2019, at least 30 days past the statutory required deadline, and as such, Helane argues that the first time the circuit court would have been able to consider Helane's services required under a service plan would have been November 15, 2019.

¶ 79     Helane also argues that there was a delay in DCFS filing a service plan. Helane states that DCFS filed three service plans with the circuit court and that the first service plan was not filed until September 4, 2020. Pursuant to section 2-10.1 of the Act (*id*. § 2-10.1), Helane argues that a service plan should have been filed with the circuit court within 45 days of the minor children being placed in shelter care and that a service plan was not filed with the circuit court within the 45 days. Helane further argues that there was no evidence presented at the fitness hearing that Helane had been given a service plan during

the relevant time period. As such, Helane argues that the State failed to establish that a service plan existed during the relevant time period since the State only requested that the circuit court take judicial notice of the April 5, 2021, and July 19, 2021, service plans at the fitness hearing.

¶ 80     Helane raises the issue of the delay in the dispositional hearing and the filing of the service plan for the first time on appeal. Helane does not provide this court with any citation to the record to demonstrate a single objection to the continuation of the dispositional hearing. In fact, the record of proceedings demonstrates that Helane informed the circuit court that she had no objection to a continuation of the dispositional hearing. Helane also fails to direct this court to any objection, either at the fitness hearing or prior thereto, regarding Helane's service plan during the time period of August 16, 2019, to May 16, 2020. As Helane indicates in her argument, the circuit court limited the evidence at the fitness hearing to the facts and circumstances that occurred during the time period of August 16, 2019, to May 16, 2020, and there was testimony from several witnesses, including Helane, as to the services required of Helane during the time period of August 16, 2019, to May 16, 2020. Helane, however, fails to direct this court to a single objection made with regard to the existence of a service plan during that period or any of the testimony concerning Helane's services during the time period of August 16, 2019, to May 16, 2020.

¶ 81     The failure to raise an issue in the circuit court results in the forfeiture of that issue on appeal. *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 22; *Kapsouris v. Rivera*, 319 Ill. App. 3d 844, 848 (2001). A party must object at the time of the purported error and

39

bring the alleged error to attention of the lower court. *Kapsouris*, 319 Ill. App. 3d at 848. The purpose of this rule is to encourage parties to raise their concerns in the circuit courts so that the lower courts have an opportunity to correct any alleged errors prior to appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Helane failed to object to, or raise the issue of, the delay in the dispositional hearing in the circuit court. Helane also failed to object to the August 16, 2019, to May 16, 2020, time period set forth in the State's motion to terminate and failed to object to any evidence regarding Helane's service plan during that period at the fitness hearing. Based on Helane's failure to object at the time of the purported errors and her failure to raise these issues in the circuit court, we find that Helane has forfeited these issues on appeal.

¶ 82    The final delay that Helane argues prevented her from completing her services was the COVID lockdown, which occurred during the last two months of the relevant period. This delay was brought before, and addressed by, the circuit court. The circuit court stated that:

> "I am sympathetic to some degree to the argument made by counsel that we were in the middle of a pandemic *** but the testimony I think from even [Adam] related to the impact of Covid was a week or two, and the testimony today was we are two months beyond completing even the substance abuse within our nine-month time period, so Covid alone does not explain missing those deadlines[.]"

It is evident by the above that the circuit court considered and weighed the effect of COVID in its determination of Helane's ability to complete her services, and this court may not

substitute our judgment for that of the circuit court regarding the weight to be given the evidence, or the inference to be drawn. *Tully v. McLean*, 409 Ill. App. 3d 659, 670-71 (2011). The circuit court found that the COVID lockdown alone did not explain Helane's failure to achieve her substance abuse services deadline, and that finding was based upon the evidence presented at the fitness hearing.

¶ 83   Also at the fitness hearing, the circuit court heard evidence that the major impediment to having the twins returned to Helane's care was her relationship with Adam, and that issue had not been resolved during the relevant time period. The circuit court may also consider conditions which later become known which effect the circuit court's ability to return a child to a parent's care, and in this matter, the circuit court properly considered the evidence that the turbulent relationship between Helane and Adam continued at the time of the hearing, such that the circuit court could not reasonably foresee the return the children to Helane's care in the near future.

¶ 84   Therefore, we find that the circuit court's finding that Helane was an unfit person as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), based on Helane's failure to make reasonable progress toward the return of the twins, Liam and Levi, during the nine-month period of August 16, 2019, to May 16, 2020, such period following the adjudication of neglect, was not contrary to the manifest weight of the evidence. Because we have upheld the circuit court's finding as to one ground of unfitness, we need not review the remaining ground.

¶ 85                         III. CONCLUSION

¶ 86    For the preceding reasons, we have determined that the circuit court's finding that Helane was an unfit person was not against the manifest weight of the evidence. Therefore, we affirm the circuit court's judgment of March 2, 2022, terminating Helane's parental rights regarding the twins, Liam and Levi.


¶ 87    Affirmed.